IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRYSTAL CARTER, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 17-5842 |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |

ORDER

**AND NOW**, this _____ day of _____, 2018, upon consideration of Defendants City of Philadelphia and Anthony Ginaldi's Motion to Dismiss, and any response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**. The Guardian Civic League of Philadelphia is dismissed as a party to this action. Plaintiffs' 42 U.S.C. § 1983 claims against the City of Philadelphia is dismissed. Plaintiffs' 42 U.S.C. § 1983 claims against Anthony Ginaldi is dismissed with prejudice. Plaintiffs' Title VII, PHRA, and PFPO claims are dismissed with prejudice.

BY THE COURT:

_____
**NITZA I. QUINONES ALEJANDRO, J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRYSTAL CARTER, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 17-5842 |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS CITY OF PHILADELPHIA AND ANTHONY GINALDI'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendants City of Philadelphia and Anthony Ginaldi file this Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. Pro. 12(b)(6), seeking that this Court dismiss all claims brought against Defendants on the grounds more fully described in the supporting memorandum of law, attached hereto.

Respectfully Submitted,

CITY OF PHILADELPHIA
LAW DEPARTMENT

Date:  <u>January 30, 2018</u>    BY:  <u>  s/ Kia Ghee            </u>
                                        Kia Ghee
                                        Assistant City Solicitor

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRYSTAL CARTER, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 17-5842 |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS CITY OF PHILADELPHIA AND ANTHONY GINALDI'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendants City of Philadelphia and Anthony Ginaldi submit this Memorandum of Law in Support of its Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6). First, the Guardian Civic League's claims should be dismissed because the Guardian Civic League does not have organizational or associational standing to bring the claims identified in the present lawsuit. Second, Plaintiffs' 42 U.S.C. § 1983 claims brought against the City of Philadelphia should be dismissed because Plaintiffs have not specifically identified a custom or policy of the City of Philadelphia that caused them any constitutional injury. Third, Plaintiffs' Title VII claims brought against Anthony Ginaldi should be dismissed because individual defendants cannot be held liable under Title VII. Finally, Plaintiffs' Title VII, Pennsylvania Human Relations Act (PHRA), and

Philadelphia Fair Practices Ordinance (PFPO) claims should be dismissed because Plaintiffs have failed to administratively exhaust those claims.

I. **FACTUAL SUMMARY**[1]

The present lawsuit has three plaintiffs: two individual African American plaintiffs, who are Philadelphia Police Officers assigned to the 39th Police District, and one fraternal organization charged with advancing the interests of African American police officers in the City of Philadelphia Police Department.  Compl. ¶¶ 2-5.

The individual Plaintiffs were partners assigned as School Liaison Officers at various schools in the Philadelphia School District. Id. ¶ 12, 14. Individual Defendant, Captain Anthony Ginaldi, was Plaintiffs' supervisor.  Id. ¶ 7.

Plaintiffs allege that Ginaldi discriminated and retaliated against them in varying ways. Primarily, Plaintiffs contend that they were involuntary transferred from their assignments as School Liaison Officers after jointly complaining of unfair and discriminatory practices. Id. ¶ 17. Plaintiffs also allege that the Defendants discriminated and retaliated against them by: (1) falsely disciplining Plaintiff Carter for missing a radio request; (2) disciplining Plaintiff Lyons for "not saying hello" to her Commanding Officer; (3) purposely delaying Plaintiffs transfer requests; (4) encouraging white male superiors and/or peers to treat Plaintiffs in disrespectful, humiliating, and unjustified ways in front of others creating a hostile work environment. Id. ¶ 19(a)-(f).

---

[1] For the purposes of this Motion to Dismiss, Defendant accepts the facts as pled by Plaintiff as true.

Plaintiffs allege that, based on these facts, Defendants have violated 42 U.S.C. § 1983 by denying their rights to the same terms, conditions, privileges and benefits of their employment agreement in violation of 42 U.S.C. § 1981. Id ¶ 24. Plaintiffs also allege that Defendants violated Title VII, the PHRA, and the PFPO by intentionally discriminating against Plaintiffs based on their race, creating a hostile work environment, and retaliating against them, Id. ¶¶ 54-72.

On June 13, 2017 Plaintiffs filed an internal EEO Charge with the Police Department. Id. ¶ 18.[2]

## II. STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss, a court must determine whether the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."

---

[2] Plaintiffs inaccurately allege in that they filed an "EEO charge internally with the PPD, the EEOC, and the Pennsylvania Human Relations Commissions." Upon request, Plaintiffs failed to produce a copy of the jointly filed EEOC Charge of Discrimination. See Electronic mail message on January 23, 2018. (Attached as "Exhibit A"). The EEOC confirmed that no such charge was ever filed. See Electronic mail message on January 24, 2018 from the EEOC. (Attached as "Exhibit B").

Id.

"The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.   Further, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679.

ARGUMENT

### A. THE GUARDIAN CIVIC LEAGUE SHOULD BE DISMISSED AS A PARTY TO THIS MATTER BECAUSE THEY DO NOT HAVE EITHER ORGANIZATIONAL OR REPRESENTATIONAL STANDING TO BRING CLAIMS UNDER 1983, TITLE VII, PHRA, OR PFPO.

Plaintiff Guardian Civic League of Philadelphia ("Civic League") has not alleged facts sufficient to assert standing on behalf of the organization itself, and it lacks representational standing to sue on behalf of its members because its members are already individual plaintiffs in this matter.

As set forth in Lujan v. Defenders of Wildlife, constitutional standing requires: (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) a causal connection between the injury alleged and the "challenged action of the defendant"; and (3) that the injury is likely to be "redressed by a favorable decision." 504 U.S. 555, 560–61 (1992). "[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." Id. at 563. The alleged injury "must affect the plaintiff in a personal and individual way." Id. at 560. In Lujan the Court held that the defendant, an environmental protection group, lacked standing to bring an

action where the harm amounted to a generalized grievance on behalf of citizens affected by the Endangered Species Act of 1973.

"An organization or association may have standing to bring a claim where (1) the organization itself has suffered injury to the rights and/or immunities it enjoys; or (2) where it is asserting claims on behalf of its members and those individual members have standing to bring those claims themselves." Blunt v. Lower Merion School Dist., 767 F.3d 247, 279 (3d Cir. 2014). There are three requirements for an organization to claim representational standing on behalf of its members: "(1) the organization's members must have standing to sue on their own; (2) the interests the organization seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires individual participation by its members." Id. at 280 (citing Hunt v. Wash. State Apple Adver. Com'n, 432 U.S. 333, 343 (1977)).

The third prong of the Hunt test is "prudential, not constitutional." Id. at 289. In Blunt, the Court of Appeals for the Third Circuit held that an organization, the Concerned Black Parents of Mainline Inc., lacked representational standing where the organization's members were already plaintiffs in the lawsuit. Id. 289-90. The Third Circuit explained that permitting an organization to litigate a case under those circumstances "does not fulfill the Supreme Court's guidance to focus on 'administrative convenience and efficiency' in determining prudential standing." Id. at 290.

Here, it is clear the Civic League is not a proper party to the instant complaint for several reasons. First, it has suffered no concrete or actual injury. For instance, the allegations in the complaint describe instances of discrimination experienced by Plaintiffs Carter and Lyons. In fact, the complaint is void of a single fact to support a plausible conclusion that the Civic League suffered any direct injury as a result of the alleged discrimination. Second, the Civic League has not identified any injury to the rights and immunities it possesses. As the court in Lujan determined, standing requires more than merely a general interest common to all members of the public." Lujan, 504 U.S. at 575. Third, absent any facts alleging actual injuries suffered, their complaints, based solely on generalized interests for African American Officers, fails the "injury in-fact test." Id. at 562. Therefore, it must claim representational standing. However, like Blunt, the organization (the Civic League) and that organization's members (Plaintiffs Carter and Lyons) are parties in the present lawsuit. Compl. ¶¶ 2-5. Similarly, like Blunt, because the remedies sought in this lawsuit will benefit the individual plaintiffs in this lawsuit, the Guardian Civic League lacks the prudential standing required by the third prong of the Hunt test, and this Court should dismiss the Civic League as a party.

Therefore, based on the foregoing reasons, the Civil League does not have standing to join the present lawsuit and this Court should dismiss the Civic League as a party.

## B. PLAINTIFFS/ 42 U.S.C. 1983 CLAIMS AGAINST DEFENDANTS FAIL BECAUSE THEY HAVE NOT PLEAD FACTS TO ESTABLISH THAT THEIR RIGHTS WERE VIOLATED AND BECAUSE THEY CANNOT IDENTIFY A MUNICIPAL POLICY, CUSTOM, OR PRACTICE THAT HAS CAUSED THEIR INJURY.

Plaintiff alleges that Captain Ginaldi and the Police Department violated their rights guaranteed under 42 U.S.C. § 1981, actionable under 42 U.S.C. § 1983. Because Plaintiffs have not made specific factual allegations on which a fact-finder could potentially conclude that her federally protected rights were violated or that the City had a custom or policy of deliberate indifference that was the moving force behind this violation, Plaintiff's 42 U.S.C. § 1983 claim should be dismissed.

### 1. Plaintiffs have not plead facts to support a plausible claim that their rights have been violated.

To prevail on a § 1983 claim premised on § 1981, a plaintiff must plead sufficient factual allegations to raise a reasonable expectation that discovery will lead evidence as to each of the following elements: (1) plaintiff is a member of a racial minoring; (2) defendant intended to discriminate on the basis of race; and (3) defendant's discrimination concerned one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts. Brown v. Phillip Morris, Inc. 250 F.3d 789, 797 (3d Cir 2001).

Here, aside from Plaintiff's conclusory allegation that "Defendants have denied Plaintiffs the right to the same terms, conditions, and privileges and benefits of their employment agreement," Plaintiffs aver no actual facts showing the same. Under the Iqbal standard, this court is not required to accept this bald legal conclusion as true.

Accordingly, Plaintiff has not met the burden of establishing a *prima facie* asserting a violation of § 1981 under § 1983.

### 2. Plaintiffs <u>Monell</u> claim fails because Plaintiffs cannot identify a municipal policy, custom, or practice that caused her injury.

Plaintiffs' <u>Monell</u> claim against Defendants should be dismissed because Plaintiffs have not identified a custom or policy of deliberate indifference that was the moving force behind the violation of their federally guaranteed rights.

#### a. Plaintiff's <u>Monell</u> claim against the Police Department fails.

With respect to municipal liability, it is well established that a plaintiff cannot recover against the Philadelphia Police Department upon a *respondeat superior* theory. For Plaintiff to prevail against the City, she must prove that a constitutionally protected right has been violated, and that the alleged violation resulted from a municipal "custom" or "policy" of deliberate indifference to the rights of citizens. <u>Monell v. New York City Dept. of Soc. Servs</u>., 436 U.S. 658, 694-95 (1978); <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990).

<u>Monell</u> held that a municipality potentially is liable under 42 U.S.C. § 1983 only if the plaintiff can prove that city employees were executing an officially adopted policy declared by city officials or that the employees were acting pursuant to an officially adopted custom or practice of the municipality. 436 U.S. at 690-91. Plaintiff must allege that the execution of a governmental policy, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicted the injury. <u>Watson v. Abington Twp</u>., 478 F.3d 144, 155 (3d

9

Cir. 2007).  A municipal "custom" within the meaning of section 1983 consists of practices engaged in by state officials that are so permanent and well-settled as to constitute a "custom or usage" with the force and effect of law.  Id. at 155.  Proof of a single unconstitutional incident is normally insufficient to impose liability under Monell. Oklahoma City v. Tuttle, 471 U.S. 808, 823-824 (1985) (emphasis added).

Moreover, municipal liability under section 1983 attaches only where a deliberate choice to follow a course of action is made from among various alternatives. Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). "If…the policy or custom does not facially violate federal law, causation can be established only by demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.  A showing of simple or even heightened negligence will not suffice." Id.

Setting aside the issue of whether Plaintiff has suffered a federally protected violation, Plaintiffs fails to allege any facts from which a fact-finder could conclude that the City has a custom or policy that caused Plaintiffs to suffer a constitutional tort.  According to the Complaint, ". . . Defendants have denied Plaintiffs the right to the same terms, conditions, and privileges and benefits of their employment agreement," Compl. ¶ 24. This allegation cannot be construed as factual support of evidence of the requisite deliberate indifference necessary for a municipality to be liable under 42 U.S.C. § 1983. Plaintiff points to no actual policy or municipal practice or custom that would have the effect of discriminating against or otherwise harassing plaintiff.

As such, Plaintiff's Monell claim against the Police Department should be dismissed with prejudice.

    b. Plaintiff's Monell claim against Defendant Ginaldi fails.

There are two theories of supervisory liability that are potentially applicable to this case. First, individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir.1989). The question of who is a "policymaker" is a question of state law. City of St. Louis v. Praprotnik, 485 U.S. 112, 142 (1988). In looking to state law, a court must determine which official has final, unreviewable discretion to make a decision or take an action. Andrews, 895 F.2d at 1481. The Third Circuit has determined that in the context of the Philadelphia Police Department, the Police Commissioner is the policy maker. Id. Here, Defendant Ginaldi was clearly not the Police Commissioner. Therefore, Defendant Ginaldi, Plaintiff's supervisor, cannot be held individually liable for any constitutional harms that Plaintiffs allege.

The second theory of liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. *See* Baker v. Monroe Township, 50 F.3d 1186, 1190–91 (3d Cir.1995). Here, Plaintiff alleges no facts to support an inference

of liability under this second theory of liability, only bald legal conclusions. Specifically, Plaintiff alleges "Commanding Officer has encouraged white male superiors and/or peers to treat Plaintiff Officers in disrespectful, humiliating, and unjustified [manners] in front of others thereby creating an extremely hostile environment." Compl. ¶ 19(f). This allegation is insufficient to support an inference that Plaintiffs suffered a federally protected harm for the reasons stated more fully above.

As such, Plaintiff's 1983 claims against Defendant Ginaldi fail.

### C. PLAINTIFFS RETALIATION, RACE DISCRIMINATION, AND HOSTILE WORK ENVIRONMENT CLAIMS FAIL BECAUSE THEY HAVE FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES UNDER TITLE VII, PHRA, AND PFPO.

1. The Title VII and PHRA claims fail[3]

As a pre-condition to filing a civil action, a plaintiff must first exhaust his or her claim by filing a charge of discrimination with the EEOC. *See* Noel v. The Boeing Co., 622 F.3d 266, 270 (3d Cir.2010); Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3rd Cir. 2013). In Pennsylvania, a joint-filed complaint must be filed with the EEOC within 300 days of an unlawful employment action to be timely. Id.

In this case, Plaintiffs failed to file a charge of discrimination with either the EEOC or PHRA as is required to proceed at this stage of litigation. Accordingly, Plaintiffs are barred from bringing disparate treatment and hostile work environment claims because they failed to exhaust their administrative remedies.

---

[3] The PHRA is interpreted in most cases as identical to federal antidiscrimination laws. Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002). So in the interest of judicial economy, Defendant will analyze both claims under Title VII.

### 2. The PFPO claim fails

Similarly, a pre-condition to filing a lawsuit under the Philadelphia Fair Practices Ordinance ("PFPO") is the filing of a charge of discrimination with the PHRC or one of its local counterparts. 43 Pa. Cons. Stat. Ann. §§ 959(h), 962(c); Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997). The Philadelphia Commission on Human Relations is empowered to enforce Chapter 9-1100 of the Philadelphia Fair Practices Ordinance, which, like the PHRA, prohibits employment discrimination based on sex. Hall v. Res. for Human Dev., Inc., No. CIV. A. 99-CV-3511, 2000 WL 288245, at *1 (E.D. Pa. Mar. 7, 2000); *See* Phila. Code § 9-1103. To bring a claim under the PFPO, a Complainant must file their claim within three hundred (300) days after the occurrence of the alleged unlawful practice. Phila. Code § 9-1112 (3). If a Plaintiff fails to file a timely complaint with the PHRC, he or she is precluded from pursing judicial remedies. Id. at 616. See also Hall v. Resources for Human Development, Inc., 2000 WL 288245 (E.D. Pa. 2000) (Kauffman, J.). The United States District Court for the Eastern District of Pennsylvania has held that an employee is required to exhaust administrative remedies before seeking judicial relief under the Philadelphia Ordinance. Richards v. Foulke Associates, Inc., 151 F.Supp.2d 610 (E.D. Pa. 2001).

Here, Plaintiffs plead no facts to show that they filed any charges or complaints with the Philadelphia Commission on Human Relations under the PFPO prior to bringing this lawsuit. As such, Plaintiffs have failed to exhaust the required administrative remedies and their PFPO claim should be dismissed.

D.  **PLAINTIFFS' TITLE VII AND PHRA CLAIMS FOR DISCRIMINAITON, HOSTILE WORK ENVIRONMENT, AND RETALITION AGAINST DEFENDANT GINALDI FAILS BECAUSE AN INDIVIDUAL SUPERVISORY EMPLOYEE IS NOT SUBJECT TO LIABILITY UNDER TITLE VII.**

Under Title VII, <u>employers</u> are prohibited from "discriminat[ing] against any individual ... because of such individual's ... sex." 42 U.S.C. § 2000e–2. The term "employer" means "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person ...." 42 U.S.C. § 2000e(b).

The Third Circuit has made clear that Title VII does not subject individual supervisory employees to liability: "Congress did not intend to hold individual employees liable under Title VII." <u>Sheridan v. E.I. DuPont de Nemours & Co.</u>, 100 F.3d 1061, 1078 (3d Cir.1996); <u>Emerson v. Thiel Coll.</u>, 296 F.3d 184, 190 (3d Cir.2002) ("individual employees are not liable under Title VII") (citing <u>Sheridan</u>, 100 F.3d 1061).

District Courts in this Circuit, however, are split on whether Title VII claims may be brought against individuals in their official capacities. On the one hand, earlier court decisions have held that supervisors could be sued under Title VII in their official capacity. *See, e.g.,* <u>Watkins v. Pa. Bd. of Prob. & Parole,</u> Civ. 02–2881, 2002 WL 32182088, at *10 (E.D.Pa. Nov.25, 2002) ("Although supervisors may not be held individually liable, Title VII is a statutory expression of traditional respondeat superior liability .... Consequently, supervisors may be sued in their official capacity"); While more recently, Courts in this Circuit have dismissed Title

14

VII claims against supervisors in his or her official capacity when the employer is also named as a defendant. *See, e.g.,* <u>Watson v. Dep't of Servs. for Children, Youths & Their Families Delaware</u>, Civ. 10–978(LPS), F.Supp.2d, 2013 U.S. Dist. LEXIS 42203, 2013 WL 1222853 at *4 (D.Del. Mar.26, 2013) ("The Title VII claims against DSCYF employees in their official capacities are actually claims against the DSCYF .... Accordingly, [plaintiff]'s Title VII claims against the DSCYF employees in their official capacities will be dismissed."); <u>Stallone v. Camden Cty. Tech. Sch. Bd. of Educ.</u>, No. CIV. 12-7356 RBK/JS, 2013 WL 5178728, at *7 (D.N.J. Sept. 13, 2013)("Title VII provides for liability against employers, not supervisors. Naming a supervisor as a defendant in his official capacity is redundant especially when, as in this case, the employer is also named as a Defendant."); <u>Foxworth v. Pa. State Police,</u> Civ. 03–6795, 2005 U.S. Dist. LEXIS 6169, 2005 WL 840374, at *4 (E.D.Pa. Apr.11, 2005) ("Because the only proper defendant in a Title VII case is the 'employer,' pursuing such claims against individuals in their official capacities would be redundant").

In <u>Watson</u>, <u>Stallone</u>, and <u>Foxworth</u>, *supra,* the courts dismissed plaintiffs Title VII claims against their respective supervisors in their official capacities as redundant when the employers were also named defendants. Moreover, in <u>Stallone</u>, the court grounded its decision to dismiss plaintiff's Title VII claim in the fact that plaintiff would suffer no prejudice since the employer was also named. Similarly, here, Plaintiff suffers no prejudice if this Court's dismisses the Title VII claims

15

against Defendant Ginaldi because Plaintiff's employer, the Philadelphia Police Department, is a named defendant.

Accordingly, Plaintiff's Title VII and PHRA claims against Defendant Ginaldi in her official capacity is actually a redundant claim against the Police Department.

### E. PLAINTIFFS HOSTILE WORK ENVIRONMENT CLAIMS FAIL BECAUSE PLAINTIFF HAS FAILED TO ALLEGE EVIDENCE OF PERVASIVE OR SERIOUS INTENTIONAL DISCRIMINATION

To the extent this Court concludes that Plaintiff has exhausted her administrative remedies, their hostile work environment claims fail because the incidents alleged in the Complaint fail to arise to the level of a hostile work environment. To prevail on a hostile work environment claim under both Title VII and the PHRA, Plaintiff must prove that (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013). In determining whether an environment is hostile, the court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 168.

Here, the discriminatory employment practices alleged in the complaint fail to meet the standard of "severe" or "pervasive." For example, the Complaint avers

the conclusory allegation that "Plaintiffs Commanding Officer encouraged white male superiors and/or peers to treat Plaintiff Officers in disrespectful, humiliating, and unjustified [manners] in front of others. . . " Compl. ¶ 19(f). <u>Plaintiffs offer absolutely no facts in support these conclusions.</u> As such, this court is not bound to accept this allegation as true.

Moreover, even in the most charitable light, Plaintiffs' attached Memorandum labeled "Disparity of Treatment of African American Females," which is incorporated by reference as Plaintiffs' Exhibit A, alleges only three (3) instances of discriminatory conduct: (Occasion #1) March 1, 2016 Officer Ammons was approached by a Sergeant who began yelling, becoming hostile, and physically threatening to that Officer in from of peers and Supervisors; (Occasion #2) on April 13, 2017 the same Sergeant began yelling at Plaintiffs in a loud, aggressive, ill-mannered, and confrontational tone telling them to leave the building; (Occasion #3) on April 25, 2017, a different Sergeant spoke to Plaintiffs in a condescending and aggressive tone in front of fellow officers who laughed in amusement. *See* Plaintiffs Memo attached to Complaint as Exhibit A.

To the extent these instances *were* harassment, they were only 3 instances over a two-month period. First, one of the incidents alleges an incident for which Plaintiffs were not personally involved. Second, Plaintiffs do not allege that these incidents interfered in any way with their work performance in any way. Finally, Plaintiffs do not allege that the incidents they experienced were physically threatening– a neutral observer would likely classify these incidents as, at worst,

innocuous, and at best a result of miscommunication between the Sergeants involved and Plaintiffs. Therefore, these incidents do not rise to the level of "severe" or "pervasive" required for a successful hostile work environment claim under Title VII or the PHRA. Accordingly, Plaintiffs hostile work environment claims should be dismissed.

## VI. CONCLUSION

Defendants City of Philadelphia and Anthony Ginaldi respectfully requests that this Honorable Court grant this Motion and dismiss Plaintiff's Complaint with prejudice.

Respectfully Submitted,

SOZI TULANTE
City Solicitor

Date: January 30, 2018          BY:   s/ Kia Ghee
                                      Kia Ghee
                                      Assistant City Solicitor
                                      Pa. Attorney ID No. 321462
                                      City of Philadelphia Law Dept.
                                      1515 Arch St., 16th Fl.
                                      Philadelphia, PA 19102
                                      (215) 683-5079
                                      Kia.Ghee@phila.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRYSTAL CARTER, et al.,** | : | |
| Plaintiffs, | : : : | |
| v. | : : | Civil Action No. 17-5842 |
| **CITY OF PHILADELPHIA, et al.,** | : : | |
| Defendants. | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that on the date below, the foregoing Motion to Dismiss and Memorandum of Law has been filed electronically and is available for viewing and downloading.

                                                                                                         Respectfully Submitted,

                                                                                                          SOZI TULANTE
                                                                                                          City Solicitor

Date: <u>January 30, 2018</u>                              BY:  <u>  s/ Kia Ghee       </u>
                                                                                                     Kia Ghee
                                                                                                     Assistant City Solicitor